IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND G. PERELMAN CHARITABLE REMAINDER UNITRUST,<br>          Plaintiff,<br>   v.<br>BEAR STEARNS & CO., INC.,<br>          Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No. 02-CV-3530<br>)<br>)<br>)<br>) |

## ORDER

IT IS HEREBY ORDERED, this ____ day of August, 2002, upon consideration of Defendant's Motion for Leave to File Reply Memorandum in Support of Its Motion to Compel Arbitration and Stay this Action, that said Motion is GRANTED, and that the reply memorandum attached as Exhibit A to the Motion for Leave shall be deemed filed as of the date of this Order.

 

_____

Thomas N. O'Neill, Jr., S.J.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND G. PERELMAN CHARITABLE REMAINDER UNITRUST, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 02-CV-3530 |
| BEAR STEARNS & CO., INC., | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

Defendant Bear Stearns & Co. Inc. hereby moves for leave to file a reply memorandum in support of its pending Motion to Compel Arbitration and Stay This Action. The proposed reply memorandum is attached to this Motion as Exhibit A.

The proposed reply memorandum contains Bear Stearns' responses to matters that have been raised by the plaintiff in its memorandum in opposition to Bear Stearns' Motion to Compel Arbitration. Bear Stearns therefore believes that the proposed reply memorandum will materially assist the Court in its analysis of the issues. For that reason, Bear Stearns requests leave to file the proposed reply memorandum.

/s/ M Duncan Grant
M. Duncan Grant (Bar No. 21726)
Joanna J. Cline (Bar No. 83195)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Eric Rieder
Elizabeth J. Goldberg
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000

Counsel for Defendant

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------- x

Raymond G. Perelman Charitable Remainder Unitrust, :
:
: Civil Action No. 02-CV-3530
Plaintiff :
:
- against - :
:
Bear, Stearns & Co. Inc., :
:
Defendant. :
:

------------------------------- x

## REPLY MEMORANDUM IN SUPPORT OF BEAR STEARNS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

Bear, Stearns & Co. Inc. ("Bear Stearns") submits this Reply Memorandum in further support of its motion to compel arbitration and to stay proceedings pending arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

The opposition brief ("Pl. Br.") and supporting papers submitted by the Raymond G. Perelman Charitable Remainder Unitrust ("Unitrust") confirm that the action filed in this Court is a transparent attempt to derail the orderly disposition of an ongoing arbitration filed by this same plaintiff concerning the same transactions in the same account, and to inflict cost and burden on Bear Stearns by turning one case into two. It is an a waste of this Court's time for the Unitrust to initiate this action while its arbitration is already pending before the NASD[1] concerning the exact same investment arising from the exact same brokerage account at Bear

---

[1]   A panel of arbitrators has been appointed for the arbitration, and a pre-hearing conference is scheduled for September 23, 2002.

Stearns. The baseless arguments offered in the Unitrust's opposition papers only reinforce the duplicative, wasteful nature of this action. The Unitrust will have a full opportunity to present its claims before the arbitration panel of the NASD, the forum that has jurisdiction over these account disputes and the forum in which the Unitrust first filed.

Unable to overcome the clear language of the Customer Agreement that compels arbitration of controversies with Bear Stearns, the Unitrust offers a contractual "interpretation" that amounts to a unilateral, after-the-fact rewriting of the contract. Contrary to the Unitrust's version of the facts, which seeks to give the starkly incorrect impression that the claims in the Complaint concerning the Unitrust's March 2002 sale of its Notes to Bear Stearns have no relationship with the Unitrust's account with Bear Stearns, this dispute **could not exist but for** the Unitrust's account with Bear Stearns. The March 2002 transaction involved the sale to Bear Stearns of securities purchased by the Unitrust in the Bear Stearns account in 1997. It is the same account and the same security at issue in both proceedings. Not only does the Unitrust not dispute that in its papers, it also submits a transaction confirmation showing that the Unitrust's sale of the Notes to Bear Stearns in March 2002 was effected in that account.

Under these circumstances, allowing litigation to proceed in this Court would not only be contrary to the parties' contractual agreement and the NASD Submission Agreement, it would also be contrary to judicial economy and common sense, by allowing two separate litigations in two forums by the Unitrust against Bear Stearns relating to the very same investment. The Unitrust should not be permitted to derail the arbitration it started and inflict on this Court and on Bear Stearns the cost and burden of litigating two separate proceedings concerning the same investment.

# ARGUMENT

## VALID ARBITRATION AGREEMENTS EXECUTED BY THE PLAINTIFF MANDATE ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST THE DEFENDANT

A.  The Customer Agreement Requires Arbitration

The Customer Agreement executed by the Unitrust states that "You [the customer] agree, and by maintaining an account for you Bear Stearns agrees, that controversies arising between you and Bear Stearns, . . . whether arising prior to, on or subsequent to the date hereof, shall be determined by arbitration."

In its opposition brief, the Unitrust seeks to rewrite the contractual language it agreed to, by contending that the arbitration clause only applies to "disputes arising out of transactions arising from Bear Stearns functioning as the Unitrust's broker and placed in the Brokerage Account." Pl. Br. at 7. This effort must fail. The arbitration clause of the Customer Agreement does not contain any limitation regarding the type of dispute to be arbitrated or require that in order for a dispute to be arbitrated, Bear Stearns must have been acting as the customer's broker. Such a construction is directly negated by the contract itself, which explicitly provides that the arbitration clause covers disputes arising before or after the execution of the agreement. Customer Agreement ¶ 21.

Creative Sec. Corp. v. Bear Stearns & Co., 671 F. Supp. 961, 964 (S.D.N.Y. 1987), cited by the Unitrust, contradicts the Unitrust's position. That case emphasizes that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and that "[l]anguage excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear' and . . . arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. (citations omitted). Unlike the arbitration provisions in that case, which

specifically limited the types of disputes which were arbitrable, the arbitration provision in the Customer Agreement contains no such limitations. See also McAllister Bros., Inc. v. A&S Transp. Co., 621 F.2d 519, 522 (2d Cir. 1980) (cited by the Unitrust) (indicating that where arbitration clause is broad, as here, arbitration should be compelled).

Under the plain language of the Customer Agreement's arbitration clause, the requirement to arbitrate disputes arising between the Unitrust and Bear Stearns was not limited to transactions executed in that account or arising when the account was active. Accord Konits v. Bear, Stearns Sec. Corp., No. 98 Civ. 8364, 2000 WL 52521, at *2 (S.D.N.Y. Jan. 24, 2000) (arbitration clause in Customer Agreement, identical to clause in Unitrust's agreement, applied to transactions outside of account for which agreement was executed). See also Nailery VII, Inc. v. Da Di Ton, C.A. No. 95-6802, 1996 U.S. Dist. LEXIS 1965, at *7-8 (E.D. Pa. Feb. 20, 1996) (giving arbitration clause its plain meaning); Troshak v. Terminix Int'l Co., L.P., Civ. A. No. 98-1727, 1998 U.S. Dist. LEXIS 9890, at *16-17 (E.D. Pa. July 2, 1998) (compelling arbitration under language of agreement); Bechtel Power Corp. v. Wyoming Valley Bldg. and Const. Trades Council, 496 F. Supp. 175, 177 (M.D. Pa. 1980) (clear and unambiguous arbitration provision is to be given its plain meaning).

The Unitrust places great weight on the inclusion of the language "by maintaining an account for you" in the arbitration clause of the Customer Agreement. The Unitrust asserts that this language requires that in order for the claims raised in this action to be arbitrable, they must relate back to the sale of the Notes to the Unitrust, when the account was maintained. Pl. Br. at 6. But that is not what the contract provides. The relevant provision of the Customer Agreement states that "You [the customer] agree, and **by maintaining an account for you** Bear Stearns agrees, that controversies arising between you and Bear Stearns" will be arbitrated

(emphasis added). The clear import of the sentence, giving meaning to all of its parts, is that the "maintaining an account" clause does not refer to the scope of the controversies that are arbitrable, but rather describes the means by which Bear Stearns, which does not sign the Agreement, manifests its assent. The scope of arbitrable controversies is set forth following the "maintaining an account" clause, which is set off from the rest of the sentence by commas; the scope is "controversies arising between you and Bear Stearns." See Great Eastern Transp. LLC v. Management of Conn., Inc., 00 Civ. 4865, 2002 U.S. Dist. LEXIS 13306, at *12-13 (S.D.N.Y. July 23, 2002) (discussing use of punctuation to assist in contract interpretation). The dispute concerning the sale of the Notes by the Unitrust to Bear Stearns is a controversy between the Unitrust and Bear Stearns. Because the claims asserted in this action by the Unitrust fall within this scope, they must be arbitrated.

      To resolve the issue before it, the Court need not go any further than the analysis above. But even under the Unitrust's insupportable construction of the agreement, arbitration is compelled. This is so because, as a factual matter, the claims in the Complaint arise out of and relate to the Unitrust's account with Bear Stearns. Further, it is undisputed that the March 2002 sale by the Unitrust to Bear Stearns was effected in that very account. In fact, the documents submitted by the Unitrust reinforce this point.

      The Unitrust's portrayal of events seeks to create the impression that the fact that Bear Stearns purchased the Notes from the Unitrust in March 2002 was a virtual coincidence, utterly unrelated to the parties' broker-customer relationship or to the pending arbitration. Pl. Br. at 6-7. This is starkly incorrect. The Unitrust's sale of its Notes to Bear Stearns arose as a result of the Unitrust's alleged displeasure with the Notes and the Unitrust's attempt to redeem its Notes. Statement of Claim ¶¶ 17, 20. As set forth in the Moving Brief and supporting papers,

-5-

after the Unitrust commenced the arbitration, it requested Bear Stearns' assistance in redeeming the Notes. There ensued extensive correspondence that led to the March 2002 sale of the Notes by the Unitrust to Bear Stearns. In that correspondence, Bear Stearns made clear it would contend that any sale by the Unitrust would affect the Unitrust's damages in the arbitration, and the Unitrust reserved its rights in the arbitration with respect to the issue of its sale of the Notes. The parties then entered into the transaction in which Bear Stearns purchased the Unitrust's Notes (this method was suggested by the Unitrust, so that it would not have to bear any risk with respect to the redemption price and value of the Notes). Goldberg Decl. Exs. 6-9, 11-13. (Citations to "Goldberg Decl." refer to the Declaration of Elizabeth Goldberg dated August 2, 2002 submitted with Bear Stearns' motion.)

Thus, the "chain of events" leading to the Unitrust's sale of the Notes to Bear Stearns arises directly out of the Unitrust's relationship and account with Bear Stearns. The fact that Bear Stearns acted as principal in the March 2002 transaction merely reflects the means agreed to by the parties, and proposed by the Unitrust, to effect the Unitrust's redemption of the Notes that it purchased in its account with Bear Stearns. The sale by the Unitrust to Bear Stearns in March 2002 thus arose out of the Unitrust's account with Bear Stearns.

Moreover, it is undisputed that Bear Stearns continued to "maintain" the Unitrust's account at the time the claims asserted in the Complaint arose. In its brief, the Unitrust, carefully qualifying its language, asserts that it "effectively" closed its Bear Stearns account in October of 2001, when it "advised Bear Stearns that it was withdrawing all of its assets from Bear Stearns." Pl. Br. at 2. For support, it relies on paragraph 10 of the Cull Affidavit, which states: "In October, 2001, the Unitrust advised Bear Stearns that it was withdrawing all of its assets from Bear Stearns, effectively closing the Brokerage Account."

Elsewhere, speaking more loosely, the Unitrust inaccurately refers to the "closed Brokerage Account." Pl. Br. at 5 n.2.

In fact, the Unitrust sent no letter and made no statement to Bear Stearns that it was terminating the relationship or "closing" the account, and it does not contend that it did. As the Cull Affidavit makes clear, all it did was instruct Bear Stearns to transfer certain assets out of the account to another brokerage firm.

Most significant, the Unitrust does not dispute the evidence set forth by Bear Stearns in its motion papers that the Unitrust's sale of the Notes to Bear Stearns and Bear Stearns' payment to the Unitrust of $2,475,000 in March 2002 were effected in that account (Goldberg Decl. Ex. 10). In its opposition, the Unitrust only claims not to have received the March 2002 account statement showing that transaction. Pl. Br. at 5 n.2; Cull Aff. ¶ 10. That assertion itself is not credible (among other things, it is made only by Mr. Cull, an accountant who says he "provides services" to the account), but in any event does not purport to dispute that the transaction was effected in that account.[2]

Further, documents submitted by the Unitrust with its opposition papers compel the very same conclusion. The Unitrust attaches as Exhibit D to the Cull Affidavit[3] a transaction

---

[2] As noted above, the Customer Agreement does not require that the account be maintained at the time of a transaction for a dispute to be arbitrable, and there is certainly no reference in the Customer Agreement to the customer being aware of the account being maintained.

[3] The Cull Affidavit indicates that Exhibit D is a confirmation of its purchase of the Notes, but this is clearly a mistake, since the confirmation that is Exhibit D concerns a March 2002 transaction, which is when the Unitrust sold the Notes to Bear Stearns, and the Unitrust's initial purchase of the Notes occurred in 1997. In its brief, the Unitrust indicates that Exhibit D is the transaction confirmation sent to the Unitrust when Bear Stearns purchased the Notes in 2002. Pl. Br. at 6 n.4. The confirmation for the Unitrust's 1997 purchase of the Notes is in fact Cull Aff. Ex. B. (The references herein to the Unitrust's exhibits are to the exhibits submitted by the Unitrust on August 21, 2002, correcting errors in the exhibits filed on August 19. According to Mr. Katz's August 21 letter, no changes were made in the affidavits or memorandum of law.)

confirmation which the Unitrust received from Bear Stearns. That document clearly indicates that the sale of the Notes by the Unitrust to Bear Stearns took place in account number 220-47681, the Unitrust's Bear Stearns account. This document not only confirms that the Unitrust's account was open at the time of this transaction in March, 2002 and that the transaction was effected in that account, it also confirms that the Unitrust knew that the account was open.[4]

In short, the claims asserted in the Complaint in this action arise out of and relate to the Unitrust's brokerage account with Bear Stearns. The March, 2002 transaction that the Unitrust complains of in the Complaint was effected in that account. Thus, even under the Unitrust's theory of the arbitration clause, the claims asserted in this action are arbitrable.[5]

B.   The Submission Agreement Requires Arbitration

In the Uniform Submission Agreement, the Unitrust agreed to submit the "matter in controversy" to arbitration. Goldberg Decl., Ex. 4. The Unitrust asserts that it could not have agreed to arbitrate "the causes of action raised in the Complaint when it filed the Uniform Submission Agreement because the causes of action in the Complaint had not arisen yet." In the Uniform Submission Agreement, the parties submitted to arbitration "the present matter in

---

[4]  The Unitrust observes that there was a difference in form between earlier confirmations and the one sent in connection with the March, 2002 sale. This is irrelevant to the issue whether arbitration is required under the language of the Customer Agreement. Also, the Unitrust's point seems to be based on the fact that the earlier confirmations contained language that transactions "are subject to the terms of any Customer Agreement between you and Bear Stearns." Pl. Br. at 6 n.4; Cull Aff. Ex. B. The Unitrust fails to inform the Court that the later confirmation states that the transaction is "subject to the terms of," among other things, "the provisions of any other written agreement or Standard Term applicable to a Transaction between you and Bear Stearns." Cull. Aff. Ex. D.

[5]  The interrelationship between the Complaint in this action and the NASD arbitration not only requires that the claims in the Complain be arbitrated pursuant to both the Customer Agreement and the Submission Agreement, it also provides a compelling basis for this Court to grant a discretionary stay, as is indisputably within its powers. See Moving Br. at 11 n.5. As stated in the Moving Brief, it would make no sense to have two separate proceedings concerning the Unitrust's claims against Bear Stearns arising out of the same investment.

controversy, as set forth in the attached statement of claim, <u>answers, cross claims and all related counterclaims and/or third party claims which may be asserted</u> . . . ." (emphasis added). However, the Unitrust ignores the bulk of this definition, asserting that it "only agreed to submit the 'present matter in controversy' as it was 'set forth in' the Statement of Claim." Pl. Br. at 8.

The Unitrust thus seeks to rewrite the Submission Agreement to exclude reference to the answer and other pleadings following the statement of claim, and to limit the scope of matters submitted for arbitration to events occurring prior to filing of the statement of claim. However, by inclusion of matters raised in the answer as within the scope of the "present matter in controversy," the Submission Agreement itself makes clear that the "matter in controversy" is not limited to issues presented by the time a statement of claim is filed. See <u>Intercity Co. Establishment v. Ahto</u>, 13 F. Supp. 2d 253, 260-261 (D. Conn. 1998) (Uniform Submission Agreement's "arbitration clause contains typically broad language covering all disputes 'related to' the original claim.")

In its answer to the Statement of Claim, Bear Stearns raised the Unitrust's lack of damages as a defense, thereby making that issue part of the "matter in controversy." The Unitrust does not dispute this point, but attempts to gloss over it by focusing solely on the issues in the Statement of Claim. As described in Bear Stearns' Moving Brief, Bear Stearns intends to rely on the Unitrust's sale of its Notes as proof that the Unitrust did not suffer any damages. The Unitrust does not even contest that Bear Stearns' reliance on the sale for proof of lack of damages raises issues related to the same matter in controversy as claims made by the Unitrust in the Complaint.[6]

---

[6]  That the Unitrust's lack of damages may require dismissal of the arbitration does not indicate that Bear Stearns is pursuing a "two faced position," as the Unitrust urges. The issue
(...continued)

Thus, it is undisputed that the facts and significance of the Unitrust's sale to Bear Stearns will be a critical part of the case presented to the NASD panel. It is also undisputed that Bear Stearns made this clear to the Unitrust in the correspondence prior to the March 2002 sale to Bear Stearns. Moving Brief at 11; Goldberg Decl. Exs. 11-16, 6. That is precisely why the Unitrust took pains to reserve its rights to make contrary arguments to the panel. Goldberg Decl. Ex. 13.[7]

Further, contrary to the impression the Unitrust seeks to create, Bear Stearns arose as a purchaser for the Notes in 2002 as a direct result of the parties' pre-existing relationship. Bear Stearns' discussion with the Unitrust about purchasing the Unitrust's Notes was directly related to the Unitrust's request that Bear Stearns assist it in redemption (made in the context of the arbitration). This is not a case where the Unitrust made an attempt to sell its Notes on the open market, and Bear Stearns happened to be the purchaser. The purchase, as reflected in the parties' correspondence, was inextricably intertwined with the parties' existing relationship and the pending arbitration.

---

(...continued)
before this Court is not whether the Unitrust has a claim on the merits but rather who should decide that issue, this Court or the NASD panel.

[7] The Unitrust's assertion that Bear Stearns' position in this motion is a "shocking" departure from Bear Stearns' prior position is not only irrelevant, but incorrect. As reflected in the May 22, 2002 letter from Bear Stearns' counsel to the Unitrust's counsel, Bear Stearns never took the position that the Unitrust's sale back to Bear Stearns was irrelevant to the arbitration; the May 22 letter only addressed the discovery issue of whether certain specific documents concerning any subsequent resale by Bear Stearns and interest received would be relevant to the arbitration (and indeed Bear Stearns in that letter invited the Unitrust in writing to articulate a reason they were relevant, which it never did). Bear Stearns' many statements throughout the discussion leading up to the March 2002 sale, and the Unitrust's statements and reservation of rights, make clear that both parties understood that the sale by the Unitrust to Bear Stearns would be at issue before the NASD panel.

The purchase of the Notes by Bear Stearns is within the matter in controversy which the parties submitted for arbitration to the NASD, and therefore arbitration is also required under the Uniform Submission Agreement.

## CONCLUSION

For the foregoing reasons, Bear, Stearns & Co. Inc. respectfully requests that

i) Plaintiff be compelled to arbitrate its claims;

ii) This action be stayed while the arbitration is pending;

iii) That Plaintiff be required to pay Bear, Stearns & Co. Inc.'s costs in this action; and

iv) For such further and other relief as this Court deems fair and appropriate.

Dated: August 27, 2002

Respectfully submitted,

*M. Duncan Grant*

M. Duncan Grant (Bar No. 21726)
Joanna J. Cline (Bar No. 83195)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000

Eric Rieder
Elizabeth J. Goldberg
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2002, copies of the foregoing Motion for Leave to File Reply Memorandum in Support of Bear Stearns' Motion to Compel Arbitration and Stay This Action, proposed Order, and proposed Reply Memorandum were served by hand delivery upon the following attorney for plaintiff:

>Barry L. Katz, Esq.
>225 City Avenue, Suite 14
>Bala Cynwyd, PA 19004

_____
M. Duncan Grant